**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSE LUIS GUTIERREZ CHANOCUA,  )<br><br>Petitioner,  )<br><br>v.  )<br><br>ANTONE MONIZ, el. al.,  )<br><br>Respondents.  ) | Case No. 26-cv-10869-ADB |

**PETITIONER'S MOTION FOR IMMEDIATE RELEASE**

### I.       Introduction

Petitioner Jose Luis Gutierrez Chanocua ("Petitioner" or "Mr. Gutierrez") respectfully

submits this motion for immediate release based on a constitutionally inadequate bond hearing,

which has resulted in his continued detention at Plymouth County Correctional Facility without a

bond.

Mr. Gutierrez's bond hearing violated his due process rights. The First Circuit has found

that "civil commitment for any purpose constitutes a significant deprivation of liberty that

requires due process protections." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021),

*citing Addington v. Texas*, 441 U.S. 418, 425, (1979)(emphasis added). In order to continue

detaining an immigration detainee under section 1226(a), "due process requires *the government* to

either (1) prove by clear and convincing evidence that she poses a danger to the community or (2)

prove by a preponderance of the evidence that she poses a flight risk." *Hernandez-Lara*, 10 F.4th

at 41. (emphasis added).

Here, the government never alleged Mr. Gutierrez was a flight risk and thus did not meet

its burden to prove flight risk by a preponderance of the evidence. Nevertheless, the Immigration

Judge denied bond based on flight risk, wrongfully placing the burden of proof on Mr. Gutierrez and relying on facts insufficiently supported by the record, in violation of due process. Because Mr. Gutierrez is unlawfully detained following a constitutionally insufficient bond hearing, Mr. Gutierrez seeks an order from this Court releasing him from custody. As an alternative, Mr. Gutierrez seeks a bond hearing before this Court.

## II.    Factual and Procedural History

Mr. Gutierrez is a 31-year-old father who has lived in the United States for approximately twenty-five years. ECF No. 1 at para. 2. Mr. Gutierrez has previously been granted Deferred Action for Childhood Arrivals ("DACA").[1] *Id.* at para. 4. Despite his DACA status, Mr. Gutierrez was arrested in Connecticut by U.S. Immigration and Customs Enforcement ("ICE") and other federal agents acting on ICE's behalf on or about January 23, 2026. Following his arrest, ICE issued Mr. Gutierrez a Notice to Appear ("NTA") alleging that he entered the United States without inspection at an unknown time and place and that he is present without being admitted or paroled. ECF. No. 8-2. He has been detained in the Plymouth County Correctional Facility since his arrest by ICE.

Mr. Gutierrez is a dedicated, loving father to a two-year-old daughter, Gigi, who has been in the custody of the Connecticut Department of Children and Families ("DCF") since February 2024. ECF No. 1-1. Prior to his ICE detention, Mr. Gutierrez had been engaging in "various interventions" which are "designed to reunify the child back into the care and custody of a parent." ECF No. 1-1. He was following the court ordered services and benefitting from those services. *Id.* Mr. Gutierrez was "fully compliant" and in "good standing" with all service providers. *Id.* Because he has been in ICE detention, Mr. Gutierrez was unable to attend a court-

---

[1] Mr. Gutierrez timely filed for renewal of his DACA. On April 3, 2026, he received a notice of intent to terminate his DACA and has 33 days to respond to this notice, which he intends to do.

ordered psychological evaluation, which would have been instrumental to determining the "best reunification outcome for the child." *Id.* at 132-133. Mr. Gutierrez's confinement prevents him from participating in court-ordered services and evaluations and continuing to bond with Gigi, which, in turn, prevents him from adequately defending against a pending petition to terminate parental rights ("TPR"). *Id.*

Mr. Gutierrez filed a Petition for a Writ of Habeas Corpus on February 14, 2026, alleging violations of his right to family integrity and his constitutional and statutory right to an individualized detention hearing. ECF No. 1. This Court granted the petition in part and ordered the immigration court to provide Mr. Gutierrez with a bond hearing under 8 U.S.C. § 1226(a). ECF. No. 12. A bond hearing was held on April 2, 2026. The Immigration Judge ("IJ") denied Mr. Gutierrez's bond because she found he was "a flight risk by the preponderance of the evidence and there is no bond amount that will mitigate his risk of flight." Lerman Decl. Exhibit A, p. 2.

In advance of the bond hearing, counsel for the Department of Homeland Security (hereinafter "the government") filed one evidence submission containing a form I-213 and two Connecticut police reports. *Id.* at 179. At the bond hearing, Mr. Gutierrez objected to the government's evidence on grounds that it contained hearsay, factual inaccuracies, and that the police reports did not have record of police having interviewed Mr. Gutierrez regarding the incidents contained within the report. Bond Hearing, Chelmsford Immigr. Ct. (recorded Apr. 2, 2026) (hereinafter "Bond Hearing").[2] The police reports also contained evidently unreliable information. *Id.* Mr. Gutierrez argued in the alternative that the IJ should give DHS's evidence limited weight, under *In re Arreguin De Rodriguez*, 21 I&N Dec. 38, 42 (BIA 1995) and *Rosa v.*

---

[2] The bond hearing was recorded and is available to Petitioner's immigration counsel via the online filing system. There is no transcript of the bond hearing produced, but Mr. Gutierrez can provide this Court with a certified transcript if required.

*Garland*, 114 F.4th 1, 17 (1st Cir. 2024), because the DHS did not provide any additional corroborating evidence. In ruling on the objection, the IJ stated that "the Court will note your objections and will give *all* the evidence the appropriate weight." *Id.* The IJ never explicitly found the I-213 or the police reports reliable.

Mr. Gutierrez filed three sets of documents in advance of the hearing. The first set contained letters of support and family documents. Lerman Decl. Exhibit A, pp. 200-275. It included a letter from his sponsor and his sponsor's financial information, Gigi's birth certificate and pictures of Mr. Gutierrez with Gigi, and twelve letters of support from friends, family, former colleagues, and his high school principal. *Id.* The first set of documents also included copies of Mr. Gutierrez's Employment Authorization Identification, his DACA approval and receipts, his resume, his diploma and certificates, and his tax returns. *Id.* The second set of documents contained Mr. Gutierrez's treatment release plan prepared by his therapist, a letter from his attorney in juvenile court, a letter from a DCF Supervised Visitor, a letter and treatment review from a DCF program supervisor, and some court documents relating to Gigi's mother, among other documents. *Id.* at pp. 96-177. The third set of documents contained scholarly articles relating to male victims of domestic violence. *Id.* at pp. 4-84. DHS did not object to the admission of any of this evidence.

During the bond hearing, counsel for DHS argued that Mr. Gutierrez posed a danger to the community, relying solely on the I-213 and the two police reports. Counsel for DHS did not assert that Mr. Gutierrez was a flight risk.

In response, Mr. Gutierrez stated that his limited criminal history was due to his troubled, high-conflict, and abusive relationship with Gigi's mother, in which he had been the victim of physical and emotional abuse. Mr. Gutierrez submitted evidence of this, including a protective order in which he was the protected person. *Id.* at 147. Mr. Gutierrez also notified the immigration

court that the charges stemming from the second police report, regarding an incident on March 29, 2025, had been nolled, meaning that state prosecutors declined to pursue charges. Proof of that had been submitted as evidence. *Id.* at 120. Mr. Gutierrez also stated that since these events, he has been actively participating in therapy and gaining insights on his past experiences to build healthy coping strategies and responses. *Id.* at 104.

Mr. Gutierrez presented extensive evidence of his community ties demonstrating lack of flight risk. First, Mr. Gutierrez told the court that he would be residing at the same address where he had been living prior to his detention in Connecticut with a sponsor and a close-knit network of family. *Id.* at 208. His sponsor was his brother-in-law and had known Mr. Gutierrez for 13 years; he wrote in his letter to the court that he would "take [Mr. Gutierrez] into his home and care for him without reservation" and ensure that Mr. Gutierrez fully complies with all court orders and appearances. *Id.* Mr. Gutierrez informed the court that both his sister and his sponsor were present in court that day. Further, Mr. Gutierrez informed the IJ that Mr. Gutierrez's father and three siblings were all in the United States—his father a U.S. citizen, and his siblings lawful permanent residents—and that his family would support Mr. Gutierrez throughout his proceedings. *Id.* at 224-233. Mr. Gutierrez also had the support of his other brother-in-law and his sponsor's father. *Id.* at 238, 252. All of them had written a letter in support. *Id.*

Second, Mr. Gutierrez emphasized that he was in TPR proceedings in the Connecticut juvenile court, which required him to remain in Connecticut and have a stable address for home visits. He explained he would remain in constant contact with the state agency, DCF. Mr. Gutierrez also pointed to a letter written by a clinician, who wrote that Mr. Gutierrez is "not isolated in his efforts [to reunify with Gigi], he is connected, accountable, and rooted in the desire to change." *Id.* at 234.

Third, Mr. Gutierrez said that he had always been fully compliant with probation and that he would continue to have check-ins with his probation officer. He also indicated that he has never had any failures to appear and emphasized that two separate state agencies would provide surveillance and monitoring for Mr. Gutierrez, ensuring that he is not a flight risk.

Fourth, Mr. Gutierrez stated that he had completed high school education and that he had a lawful history of employment. He submitted a letter from his middle and high school principal, who wrote that "even at a young age, he showed a sense of responsibility and integrity that left a lasting impression." *Id.* at 257. He also submitted letters from his former colleagues, who described him as reliable, hardworking, and dedicated to his obligations at his workplace. *Id.* In the same letters, he is described as a faithful man and a valued member of his local church. *Id.*

Fifth, Mr. Gutierrez said that he was seeking multiple forms of relief in removal proceedings: asylum, cancellation of removal, and relief under the Violence Against Women Act. Mr. Gutierrez emphasized that he entered the United States as a six-year-old and that he had previously held DACA. Mr. Gutierrez also stated that he has the assistance of pro bono counsel located in New Haven, Connecticut, which is about 25 minutes from his planned residence in Middletown, Connecticut.

Sixth, Mr. Gutierrez asked the immigration court to consider alternatives to detention, like electronic monitoring and check-ins, stating that he would be willing to abide by any and all conditions the court might seek to impose.

Separately, Mr. Gutierrez advanced a due process argument based on his pending TPR in Connecticut juvenile court. He argued that, should the IJ not release him, he would not get to participate in the TPR trial and that his parental rights would be automatically terminated, with implications for Gigi's right to a biological parent as well.

The IJ found that Mr. Gutierrez was not a danger to the community. *Id.* at 2; Bond Hearing. But the IJ nevertheless denied Mr. Gutierrez bond, stating that no bond amount would mitigate Mr. Gutierrez's flight risk. *Id.* The IJ pointed to the fact that Mr. Gutierrez "violated restraining orders," which the court found "concerning." *Id.* The IJ also stated that the TPR proceedings were "due to the Respondent's own actions." *Id.* The IJ did not specify which "restraining orders" she was referring to, did not discuss any other evidence, and did not consider alternatives to detention. The government waived appeal. *Id.*

### III.    Jurisdiction

#### A.  <u>**This Court has authority to consider Mr. Gutierrez's challenges to the bond hearing.**</u>

This Court has jurisdiction over Mr. Gutierrez's claims. In this case, 8 U.S.C. § 1226(e) does not strip this Court of jurisdiction, because § 1226(e) does not bar habeas review of constitutional claims challenging the legality of the bond hearing process. Section 1226(e) only prevents "review of the Attorney General's discretionary judgment." *Saint Fort v. Ashcroft*, 329 F.3d 191, 200 (1st Cir. 2003) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)). It does not prevent judicial review in the form of "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *see also Garcia v. Hyde*, C.A. No. 25-cv-585-JJM-PAS, 2025 WL 3466312, at *5–6 (D.R.I. Dec. 3, 2025) (§ 1226(e) does not foreclose habeas review when a detained noncitizen challenges the constitutional adequacy of the bond hearing).

Here, Mr. Gutierrez challenges the denial of bond as both legally erroneous and unconstitutional. A District Court sitting in habeas retains jurisdiction over both challenges. *Mayancela Mayancela v. FCI Berlin, Warden*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *4 (D.N.H. Nov. 18, 2025). First, determination of flight risk is a mixed question of law and fact which is reviewable by the district court as a question of law. *España v. Nessinger*, No. 26-CV-

014-JJM-PAS, 2026 WL 821788 *6 (D.R.I. Mar. 25, 2026); *Miri v. Bondi*, 2026 WL 622302, at *5

(C.D. Cal. March 5, 2026) (similar); *Martinez v. Clark*, 124 F.4th 775, 779 (9th Cir. 2024)

(similar). The United States Supreme Court has clearly stated that the application of a statutory

legal standard to an established set of facts is a "quintessential" mixed question of law and fact in

the context of the Immigration and Nationality Act. *Wilkinson v. Garland,* 601 U.S. 209 (2024);

*Guerrero-Lasprilla v. Barr,* 589 U.S. 221, 221–222 (2020) (similar). Legal errors in Mr.

Gutierrez's bond hearing are reviewable in this Court.

Second, constitutional deficiencies in bond hearings are also reviewable in this Court.

*España*, 2026 WL 821788 * 5 (citing *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)

("[C]laims that the discretionary process itself was constitutionally flawed are cognizable in

federal court on habeas because they fit comfortably within the scope of § 2241."); *see also*

*Miranda v. Garland*, 34 F.4th 338, 373 n.1 (4th Cir. 2022) (Urbanski, J., concurring) ("Whether

noncitizens receive due process 'is not a matter of discretion' and is subject to judicial review.");

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 176 (D.D.C. 2015) ("[I]t is not within DHS's discretion to

decide whether it will be bound by the law.")). In this motion, Mr. Gutierrez raises due process

claims regarding the fairness of the proceedings. Because Mr. Gutierrez's challenge raises

constitutional questions about whether he is "in custody in violation of the Constitution," 28

U.S.C. § 2241(c)(3), this Court has jurisdiction to adjudicate the claims raised in this motion.

### B. **Mr. Gutierrez is not required to exhaust any further administrative remedies before seeking relief directly from this Court.**

There is no requirement that Petitioner exhaust administrative remedies by moving to

reconsider or for an appeal to the BIA prior to bringing this action.  There is no statutory requirement

for Petitioner to exhaust administrative remedies.  *See Gomes v. Hyde*, 804 F.Supp.3d 265, 272 (D.

Mass. 2025) ("[E]xhaustion is not required by statute in this context.") (citing *Rodriguez v. Bondi*,

No. 25-CV-406, 2025 WL 2899769, at *3 (D.R.I. Oct. 10, 2025)).  Instead, "this case is governed

by the 'more permissive' common-law exhaustion standard," where the Court "may find exhaustion to be unnecessary where" (1) "'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim,'" *Garcia*, 2025 WL 3466312, at *6 (quoting *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997)); (2) when the "legal question is fit for resolution and delay means hardship," *id.* (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000)); and/or (3) "if a substantial doubt exists about whether the agency is empowered to grant meaningful redress," *id.* (quoting *Portela-Gonzalez*, 109 F.3d at 77).

First, Mr. Gutierrez is being irreparably harmed by his ongoing unlawful detention without a constitutional bond hearing. *See Romero v. Hyde*, No. 25-CV-11631, 2025 WL 2403827, at *6–8 (D. Mass. Aug. 19, 2025) (no exhaustion required because "[o]bviously, the loss of liberty is a . . . severe form of irreparable injury" (internal quotation marks omitted)); *Flores Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (declining to require administrative exhaustion, including because "[a] loss of liberty may be an irreparable harm"); *cf. Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (noting "'[e]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest'") (citing *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986)); *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005) (holding "loss of liberty [that] is a . . . severe form of irreparable injury").

Second, forcing Petitioner to appeal to the BIA would result in an extreme delay and significant hardship.  As multiple courts within this Circuit have noted, "the average processing time for bond appeals exceeded 200 days in 2024," indicating Petitioner would "likely face several additional months of detention while awaiting a BIA decision in [this] case." *Garcia v. Hyde*, 2025 WL 3466312, at *6 (waiving exhaustion because of delay associated with BIA appeal); *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 25–26 (D. Mass. 2025) (holding 200 day average processing time would

constitute "a prolonged loss of liberty [that] would, in these circumstances, constitute irreparable harm"); *Gomez v. Hyde*, 804 F. Supp. 3d 265, 272–73 (D. Mass. 2025) (same).

Third, Mr. Gutierrez need not exhaust his administrative remedies because the immigration court lacks jurisdiction to adjudicate the constitutional claims raised by Petitioner, and any attempt to raise such claims would be futile. *See Flores-Powell*, 677 F. Supp. 2d at 463 (holding "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions and its prior interpretation" of the relevant statute); *Figueroa v. McDonald*, 680 F. Supp. 3d 18, 22 (D. Mass. 2018) (holding exhaustion not required where petition was seeking constitutional challenges to immigration bond hearing, which "'falls outside the scope of § 1226(e)' because it is not a matter of the IJ's discretionary judgment") (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)); *Matter of Cruz de Ortiz*, 25 I&N Dec. 601, 605 (BIA 2011) ("[N]either we nor the Immigration Judges have authority to rule on the constitutionality of the statutes we administer.").

Accordingly, there is no requirement for Petitioner to further exhaust administrative remedies before pursuing this Petition. *See Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, (1st Cir. 1997) (explaining that, where exhaustion is not required by statute, administrative exhaustion not required in situations of irreparable harm, futility, or predetermined outcome).

## IV.    Legal Argument

### A. __The Immigration Judge failed to apply the correct legal standards and adhere to constitutional due process in assessing flight risk in Mr. Gutierrez's case.__

Due process requires that immigration detention under § 1226(a) be justified through a constitutionally adequate bond hearing. The government bears the burden to justify continued detention at a bond hearing: it must prove dangerousness by clear and convincing evidence, and flight risk by a preponderance of the evidence. *Hernandez-Lara* 10 F.4th at 41.

The *Hernandez-Lara* court applied the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) balancing test to noncitizen detention, concluding that due process requires the government, not

the noncitizen detainee, to bear the burden for justifying continued detention. First, the "private interest at stake" weighs heavily in the noncitizen detainee's favor, as "freedom from imprisonment" is at the "heart of the liberty" protected by the Due Process Clause. *Id.* at 28. The First Circuit noted that conditions of imprisonment for noncitizen detainees were "indistinguishable" from those imposed on criminal defendants and that the length of detention under 8 U.S.C. § 1226(a) is "impossible to predict" and "frequently prolonged." *Id.*

Second, the risk of "erroneous deprivation" is very high for noncitizen detainees. Detained individuals face obstacles to "gathering evidence on their own behalf." *Id.* at 30. The government also has a significant advantage over noncitizen detainees, as the government is better acquainted with "immigration law," "procedures," and "the particular preferences of individual IJs." *Id.* at 31. The "odds of error" are reduced by placing the burden on the government, "as in virtually other instances of proposed lengthy detention." *Id.*

Third, the government has no significant interest in placing the burden on the noncitizen detainee. Releasing noncitizens who are neither a danger nor a flight risk actually "save[s] the government, and therefore the public, from expending substantial resources on needless detention." *Id.* at 33. The *Hernandez-Lara* court concluded that due process required the burden of proof for both dangerousness and flight risk should be placed on the government, observing that misallocation of the burden of proof increases the likelihood of prejudicial error. *Id.* at 31.

To meet its burden of proof, the government's evidence must be sufficiently reliable, as well as "specific and probative," to satisfy the applicable burden. *Garcia v. Hyde*, No. 25-CV-585-JJM-PAS, 2025 WL 3466312 at *8–9 (D.R.I. Dec. 3, 2025). Failure to consider "all of the available evidence" in a bond hearing violates due process. *See Obregon v. Sessions*, No. 17-CV-01463-WHO, 2017 WL 1407889 * 7 (N.D. Cal. Apr. 20, 2017) (invalidating denial of bond where

IJ failed to assess mitigating evidence and efforts at rehabilitation). None of these due process requirements were met in Mr. Gutierrez's case.

> i. *The IJ misallocated the burden of proof by finding flight risk when the government did not allege Mr. Gutierrez was a flight risk.*

The IJ violated Mr. Gutierrez's due process rights by failing to hold the government to their burden of proof. In the First Circuit, the government bears the burden to show flight risk by a preponderance of the evidence to continue the noncitizen's detention. *Hernandez-Lara,* 10 F.4th at 41. The burden of showing something by a "preponderance of the evidence . . . requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before [they] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'" *Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993); *see also* Preponderance of the Evidence Definition, Black's Law Dictionary (12th ed. 2024) *available at* Westlaw (defining preponderance of the evidence as "superior evidentiary weight that . . . is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other"). The IJ does not have discretion to "fail to apply the burden of proof that due process requires." *Mayancela*, 2025 WL 3215638 at \*5.

The government must carry this burden by providing "probative and specific evidence." *Garcia*, 2025 WL 3466312, at \*8–9. As the United States Supreme Court emphasized in *Concrete Pipe*, prior to applying the burden of proof, the factfinder must first evaluate the evidence, "finding it to be sufficiently reliable and sufficiently probative to demonstrate the truth of the asserted proposition with the requisite degree of certainty." *Concrete Pipe*, 508 U.S. at 622. If the government fails to meet its burden with satisfactory evidence, bond must be granted. *Garcia*, 2025 WL 3466312, at \*2 (citing *Gomes*, 804 F.Supp.3d at 268–70); *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530, at \*4 (D. Me. Aug. 29, 2025)).

The government *per se* failed to meet its burden here because the government did not allege Mr. Gutierrez was a flight risk. The government did not provide the "probative and specific evidence" required to support Mr. Gutierrez's ongoing detention. By still finding that Mr. Gutierrez posed a flight risk, the IJ unconstitutionally placed the burden of proof on Mr. Gutierrez and failed to remain a "neutral and impartial arbiter . . . assiduously refrain[ing] from becoming advocates for either party" as required by constitutional due process. *Almeida De Souza v. Moniz*, No. 25-CV-12509, 2025 WL 3101763 at *3 (D. Mass. Nov. 6, 2025) (citing Aguilar-Solis v. I.N.S., 168 F.3d 565, 569 (1st Cir. 1999)). A bond hearing where the IJ requires the Respondent to carry the burden of proof regarding danger or flight risk is unconstitutional under the Due Process Clause of the Fifth Amendment. *Hernandez-Lara,* 10 F.4th at 39; *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 692–93 (D. Mass. 2018).

> ii. *Because the evidence presented at the bond hearing could not have supported the IJ's decision to deny bond as a matter of law, the IJ's decision violates due process.*

Assuming *arguendo* that the IJ was free to draw her own conclusions from the record, despite the government not alleging flight risk, the evidence on the record in the bond hearing could not have supported a finding of flight risk by a preponderance of the evidence.

Mr. Gutierrez presented comprehensive evidence against risk of flight, consistent with the *Guerra* factors. *In Re Guerra*, 24 I. & N. Dec. 37 (BIA 2006), *abrogated by Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021).[3] He had a United States Citizen sponsor, a close brother-in-law

---

[3] *In re Guerra* provides the factors that IJs must consider in determining whether "an alien merits release from bond, as well as the amount of bond that is appropriate." The factors include "(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

who had known Mr. Gutierrez for thirteen years, vouched for his character, and confirmed that he would take financial responsibility for Mr. Gutierrez during the pendency of his immigration proceedings. Lerman Decl. Exhibit A, p. 208. Mr. Gutierrez submitted twelve letters of support from all corners of his life: family, coworkers, friends, and even his old high school principal. *Id.* at 257. Mr. Gutierrez's counsel also informed the IJ that Mr. Gutierrez has always been fully compliant with probation and that he would continue to have contact with his probation officer. Bond Hearing. Mr. Gutierrez successfully completed high school education and had a lawful history of employment. Lerman Decl. Exhibit A, pp. 264–74. Mr. Gutierrez has paid taxes and submitted his recent tax returns. *Id.* at 271. Further, Mr. Gutierrez has no failures to appear on his record. Mr. Gutierrez has previously held DACA and had already filed for multiple forms of relief—his pro bono counsel has filed an asylum application, an application for the cancellation of removal, and a petition for relief under the Violence Against Women Act. Bond Hearing.

On top of this evidence, Mr. Gutierrez presented an incontrovertible argument against flight risk: the TPR proceeding pending in the Connecticut juvenile court for his beloved daughter. *Id.* at 132. Because he is in detention, Mr. Gutierrez has not been able to defend against TPR, which requires his active participation, including obtaining a psychological evaluation, attending supervised visits, and appearing in court. *Id.* If he were to be released, he would again be actively participating in the juvenile court proceedings, which not only requires him to have a stable address for visits, but also puts him under surveillance by the juvenile court and the Department of Children and Families. *See id*.

Mr. Gutierrez presented extensive evidence of his strong attachment to his daughter and his dedication to reunifying with her. *Id.* at 219-222; *Id.* at 135, 137. Mr. Gutierrez also submitted evidence of a pending trial date through his attorney in juvenile court, who indicated that Mr. Gutierrez is the only viable biological parent to care for the child. *Id.* at 132 All evidence

indicated that Mr. Gutierrez would be focused solely on reunifying with his daughter after release and that he would have no incentive to abscond and leave his child with no biological parent. This conclusion was corroborated by his filing for cancellation of removal based on hardship to Gigi and his own words: that he was fighting deportation because of Gigi. *Id.* at 119.

Against this mountain of evidence, the IJ stated that Mr. Gutierrez nevertheless posed a flight risk because he "violated restraining orders."  Bond Hearing. This was (1) an erroneous statement of fact, (2) not reliably supported by the record, and (3) failed to satisfy the preponderance of the evidence standard as a matter of law. The IJ's decision, therefore, failed to hold the government to their burden of proof, violating due process.

First, Mr. Gutierrez has never violated any "restraining" orders. The I-213 asserts that Mr. Gutierrez was arrested and charged for the violation of a *protective* order on February 27, 2024, and March 27, 2024. *Id.* at 183.[4] The I-213 then notes that, in April 21, 2025, the court nolled the violation of a protective order charge, which, in Connecticut, means that the prosecutor declined to pursue charges. *Id.* The I-213 contains no record of convictions for violation of a protective order. Thus, the IJ denied Mr. Gutierrez bond based on a charge that was dropped by state prosecutors and did not result in a conviction, despite the significant countervailing evidence placing him as a valued and responsible member of this community.

Second, the record before the IJ did not contain satisfactory proof that Mr. Gutierrez was ever charged by Connecticut state prosecutors for violation of a protective order. Although the IJ did not state her basis for the belief that Mr. Gutierrez had violated a protective order, there were only two sources of information available to support that belief: the I-213 and a state police report

---

[4] Restraining orders are distinct from protective orders. In Connecticut, the superior court can enter a restraining order to protect any family or household member who is the victim of domestic violence. Conn. Gen. Stat. § 46b-15. Protective orders are issued to protect parties to a family violence case pending before the superior court. Conn Gen. Stat. § 46b-38c.

describing an arrest for violation of a protective order. *Id.* at 183, 185. The government did not file any other evidence proving that Mr. Gutierrez violated a protective order. Neither was sufficient to sustain the IJ's finding that Mr. Gutierrez violated a protective order.

An I-213 is essentially a police report created by a DHS officer, and therefore, while presumptively reliable, subject to the circumspect treatment appropriate to untested allegations made outside of court. *España*, 2026 WL 821788 at *11 (citing *Garcia-Aguilar v. Lynch*, 806 F.3d 671, 673 (1st Cir. 2015) (observing that an I-213 is a standard government form created by an ICE agent that documents biographical and factual information about a noncitizen); *Jianli Chen v. Holder,* 703 F.3d 17, 23 n.4 (1st Cir. 2012) (noting that an I-213 is "the form customarily prepared by border patrol agents incident to [a noncitizen's] apprehension at the border")). An I-213 is not evidence of those criminal charges themselves. *Id.* (citing *Olivas-Motta v. Holder*, 746 F.3d 907, 918 (9th Cir. 2013) (Kleinfeld, J., concurring) ("It has long been clear that police reports are not generally 'reasonable, substantial, and probative evidence' of what someone did.")).

An I-213, like a police report, loses its presumptive reliability and becomes untrustworthy if it contains inaccuracies. *España*, 2026 WL 821788 at *11–12 (citing *Andrade-Prado v. Garland*, 64 F.4th 386, 394 (1st Cir. 2023)). Further, an I-213 also loses trustworthiness if "the information contained within it was obtained by someone other than the noncitizen who is the subject of the form," as an I-213 is a "record of a conversation with [the noncitizen]." *Id.* (citing *Pouhova v. Holder,* 726 F.3d 1007, 1013 (7th Cir. 2013); *Rosendo-Ramirez v. I.N.S.*, 32 F.3d 1085, 1088 (7th Cir. 1994)). In Mr. Gutierrez's case, the I-213 both exhibited inaccuracies and contained information that was not obtained from Mr. Gutierrez himself.

Mr. Gutierrez objected to the admission of the I-213 at the outset of the hearing. Bond Hearing. Mr. Gutierrez argued that the I-213 included "serious indicia of unreliability": for example, the I-213 stated that Mr. Gutierrez was born in 1989, although he was born in 1995; the

police report contained no indication that the police tried or did interview Mr. Gutierrez to verify details; Mr. Gutierrez also presented evidence that the complainant in the first police report was "generally unreliable," as she had previously been charged with, and pleaded no contest to, making a false statement to the police regarding Mr. Gutierrez. Lerman Decl. Exhibit A, pp. 170–72. The IJ agreed to give the I-213 and the police reports "appropriate" weight and never found them to be sufficiently reliable, which is required by procedural due process. *See Concrete Pipe*, 508 U.S. at 622 (requiring factfinder to ascertain reliability of the evidence prior to imposing the applicable burden of proof).

Given the limited weight they deserve, the I-213 and the police report are insufficient to substantiate the judge's finding that Mr. Gutierrez, in fact, violated a protective order, without other corroborating evidence. *In re Arreguin De Rodriguez*, 21 I&N Dec. 38, 42 (BIA 1995) ("[W]e are hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein. Here, the applicant conceded that the arrest took place but admitted to no wrongdoing. Considering that prosecution was declined and that there is no corroboration, from the applicant or otherwise, we give the apprehension report little weight."); see also *Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024) (holding that the BIA "may not give 'substantial weight' to a police report in the absence of 'a conviction or corroborating evidence of the allegations contained' in the report")). The government in Mr. Gutierrez's case did not submit any corroborating evidence—no testimony, no court record, no evidence of the underlying protective order—leaving the IJ to infer that there had been some violation of some order, unspecified, as alleged in the police report.

Third, even if this Court considers the I-213 and the police report to be sufficient to show Mr. Gutierrez violated a protective order, that violation alone cannot prove flight risk by a preponderance of the evidence. First, the violation of a protective order was nolled. Second, under

the "probative and specific evidence" requirement, the IJ is required to state how that violation is relevant to the question of flight risk. *Kharis v. Sessions*, No. 18-CV-04800-JST, 2018 WL 5809432 *8 (N.D. Cal. Nov. 6, 2018). For example, in *Kharis v. Sessions*, a District Court determined that, allegations in a Russian arrest warrant stating that the "noncitizen had participated in a scheme to embezzle roughly $114 million" was sufficient to find flight risk and was not a violation of due process. *Id.* The astronomical sum described in the warrant showed that the noncitizen likely had the means and motive to flee, and that no amount of bond would provide a "sufficient incentive" to appear. *Id.* The IJ did not make any such finding in this case, stating merely that Mr. Gutierrez violated the orders of another court, making him a flight risk, a generalized observation that could apply to any violations of law.

The "superior weight of the evidence" in Mr. Gutierrez's case was against a finding of flight risk. *See* Preponderance of the Evidence Definition, Black's Law Dictionary (12th ed. 2024) *available at* Westlaw. In the face of extensive evidence negating flight risk, the government failed to show that Mr. Gutierrez was more likely to flee than not, as required by the evidentiary standard—why a man, who has been committed to reunifying with his daughter and is fighting deportation to be there for her, would disappear upon release.

Failure to hold the government to their burden of proof violates due process. An IJ fails to hold the government to their burden of proof when she finds in their favor *sua sponte* based on arguments never put forward by the government. An IJ also fails to hold the government to their burden of proof when she relies on an "unreliable, uncorroborated" I-213 or police report, never finding the government's evidence to be actually reliable. *See España*, 2026 WL 821788 *13 (citing cases). Further, an IJ may not "simply ignore substantial testimonial and documentary proof" when holding the government to their burden. *Barnica-Lopsez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (quoting *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007)). Further, IJ must

give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[ ] [their] reasoning." *Id*. (quoting *Pan*, 489 F.3d at 87); *Garcia*, 2025 WL 3466312, at *1 (similar). The IJ's decision does not reflect adherence to the burden of proof and therefore violates due process.

> *iii. The Immigration Judge failed to consider alternatives to detention.*

The IJ failed to consider less restrictive measures, such as electronic monitoring, reporting requirements, third-party custodianship, or other conditions, even though Mr. Gutierrez affirmed his willingness to abide by any and all less restrictive measures at the bond hearing. The IJ did not provide any justifications for concluding that none of the measures available to the court could reasonably mitigate any perceived risk of flight.

IJs are constitutionally required to consider alternatives to detention. *Doe v. Tompkins*, No. CV 18-12266-PBS, 2019 WL 8437191 at *2 (D. Mass. Feb. 12, 2019), aff'd, 11 F.4th 1 (1st Cir. 2021) ("The immigration court shall properly allocate the burden of proof and consider alternative methods to ensure the safety of the community and Doe's future appearances like GPS monitoring."). In *Costa v. McDonald*, this Court granted habeas relief where an IJ denied bond under 8 U.S.C. § 1226(a) without addressing whether less restrictive conditions could reasonably mitigate any danger or flight-risk concerns. No. 25-CV-13469-AK, 2026 WL 371198, at *2–4 (D. Mass. Feb. 10, 2026). The Court explained that the *Hernandez-Lara* burden-allocation rule is necessary but not sufficient: due process also requires consideration of alternatives to detention so that confinement remains narrowly tailored to its preventive purposes. The Court further reasoned that requiring the Government to address less restrictive conditions is a concrete way to reduce the risk of erroneous deprivation of liberty. *Id*. at *3–4 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), and *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Therefore, the IJ's failure to consider alternatives to detention in Mr. Gutierrez's case violated his due process rights.

**B.   Immediate release is the appropriate remedy in Mr. Gutierrez's case**

This Court has the authority to order Mr. Gutierrez's immediate release. 28 U.S.C. § 2243 (authorizing courts to dispose of habeas actions as "law and justice require"); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (emphasizing the flexibility of remedies under due process). Courts of this Circuit have ordered the detainee's immediate release when the immigration court fails to provide a constitutionally adequate bond hearing after being ordered to provide one by the Court. *Garcia vs. Hyde*, D.R.I., No. 25-CV-585-JJM-PAS at *12 (Dec. 3, 2025) (ordering immediate release of petitioner from custody where IJ's decision constituted an "error of law" that violates due process); *España*, 2026 WL 821788 * 12–13 (ordering immediate release where DHS failed to meet burden of proof with reliable, corroborated evidence); *see Jimenez v. Cronen*, 317 F. Supp. 3d 626, 657 (D. Mass. 2018) (observing that ordering a repeat of a bond hearing is an insufficient remedy when detainee's due process rights have been violated).

Courts of this Circuit have also acknowledged that IJs face "enormous pressure" from the Executive Branch to "rule in certain ways," but that due process is not satisfied by "rubberstamp denials of bond." *Garcia vs. Hyde*, D.R.I., No. 25-CV-585-JJM-PAS at * 12 (Dec. 3, 2025) (citing *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999)). IJs are still required to ensure that noncitizens receive "constitutionally adequate" bond hearings. *Id.* Because the IJ in Mr. Gutierrez's case failed to do so, this Court should require Mr. Gutierrez's immediate release.

**V.      Conclusion**

For all the foregoing reasons, Petitioner Jose Luis Gutierrez Chanocua respectfully requests that this Court order his immediate release subject to reasonable conditions. In the alternative, Mr. Gutierrez seeks a bond hearing before this Court.

Respectfully submitted,

JOSE LUIS GUTIERREZ CHANOCUA

By his counsel,

Dated: April 15, 2026

/s/ *Hillary Farber*
Hillary Farber
BBO# 428461
University of MA School of Law
333 Faunce Corner Rd
N. Dartmouth, MA 02747
(617) 413- 4600
Hfarber@umassd.edu

*Pro bono counsel for Petitioner*


/s/ *Rachel Lerman*
Clinical Fellow
Medical-Legal Partnership Clinic
Yale Law School
127 Wall Street
New Haven, CT 06511
Email: rachel.lerman@yale.edu
Phone: (203) 903-1505

*Pro hac vice pro bono counsel for Petitioner*

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

I, Hillary Farber, hereby certify that in accordance with Local Rule 7.1(a)(2), counsel for Petitioners and counsel for respondents met and conferred in good faith on April 13, 2026, and counsel for Respondents opposes this motion.

Dated: April 15, 2026                    /s/ Hillary Farber
                                         Hillary Farber
                                         BBO# 428461
                                         University of MA School of Law
                                         333 Faunce Corner Rd
                                         N. Dartmouth, MA 02747
                                         (617) 413- 4600
                                         Hfarber@umassd.edu

**Certificate of Service**

I hereby certify that I caused the foregoing motion to be served on Respondents' counsel on this 15th day of April, 2026 via the CM/ECF platform.

                                         /s/ Rachel Lerman
                                         Clinical Fellow
                                         Medical-Legal Partnership Clinic
                                         Yale Law School
                                         127 Wall Street
                                         New Haven, CT 06511
                                         Email: rachel.lerman@yale.edu
                                         Phone: (203) 903-1505